UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

JESSIE DENE ADAMS,

        Plaintiff,

v.

UNKNOWN HEILIG et al.,

        Defendants.
_____/

Case No. 1:25-cv-595

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Rockwell, Earegood, and Rakell. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment, Eighth Amendment sexual assault, and Fourteenth Amendment claims against remaining Defendant Heilig. Plaintiff's Eighth Amendment excessive force claim against Defendant Heilig remains in the case.

**Discussion**

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the MDOC and the following IBC staff: Officer Unknown Heilig and Sergeants Unknown Rockwell, Unknown Earegood, and Unknown Rakell.

Plaintiff alleges that, on February 11, 2025, he was in the chow hall and had just sat down when Defendant Heilig ordered Plaintiff to sit at the other end of the table. (Compl., ECF No. 1, PageID.3.) Plaintiff told Defendant Heilig that the spot that Defendant Heilig had indicated was dirty as someone was just sitting there. (*Id.*) Defendant Heilig stated, "I don't care. Move now!" (*Id.*) Plaintiff again did not move, telling Defendant Heilig, "someone was just sitting there a second ago." (*Id.*) Defendant Heilig then ordered Plaintiff to dump his tray and leave the chow hall. (*Id.*) When Plaintiff pleaded with Defendant Heilig to be able to eat his food, Defendant Heilig again told Plaintiff, "No! Dump your tray and leave!" (*Id.*)

Plaintiff proceeded to the trash can, while trying to eat as much of his food as he could before leaving. (*Id.*) Defendant Heilig then grabbed Plaintiff by the left arm, threw Plaintiff against the wall," and, with his left forearm against Plaintiff's neck, rubbed "the crack of [Plaintiff's] buttocks in a sexually/[fondling] motion while whispering, 'You like that b****!'" (*Id.* (asterisks added).) At that point, Defendants Earegood and Rockwell arrived and escorted Plaintiff to segregation. (*Id.*)

Plaintiff alleges that he was falsely charged with assault and battery on staff, which was reviewed by Defendant Rakell. (*Id.*) The non-party Administrative Law Judge who conducted the

hearing on Plaintiff's misconduct charge found Plaintiff guilty because he "squirmed" while pressed against the wall. (*Id.*)

As a result of the events described within Plaintiff's complaint, Plaintiff seeks monetary compensation and injunctive relief in the form of "immediate parole." (*Id.*, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

3

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.  Request for Immediate Parole

Plaintiff seeks injunctive relief in the form of "immediate parole." (Compl., ECF No. 1, PageID.4.) However, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Thus, Plaintiff's request for immediate parole is not properly asserted in his civil rights complaint, and the Court will dismiss Plaintiff's request for injunctive relief for failure to state a claim upon which relief can be granted. *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (concluding that dismissal is appropriate where Section 1983 action seeks equitable relief and challenges fact or duration of confinement).

### B.  Claims Against the MDOC

As noted above, Plaintiff has named the MDOC as a Defendant in this matter. Plaintiff, however, may not maintain a § 1983 action against the MDOC.

Section 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). But the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. The Court, therefore, will dismiss the MDOC as a Defendant.

C.    **First Amendment Retaliation Claims**

Plaintiff alleges that he refused Defendant Heilig's order to move to a different seat at the chow hall table two times, each time telling Defendant Heilig that someone else had been recently sitting in that spot. (Compl., ECF No. 1, PageID.3.) Plaintiff then alleges that Defendant Heilig shoved Plaintiff against the wall, fondled Plaintiff's buttocks, and charged Plaintiff with assault and battery of prison staff. (*Id.*) The Court will liberally construe Plaintiff's allegations as raising a claim of First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Here, Plaintiff's retaliation claim fails at the first step because he has not alleged that he engaged in any protected activity.

As the Sixth Circuit explained in *Thaddeus–X*, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 394; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). Plaintiff admits that he twice refused Defendant Heilig's order to move to a different seat and again refused Defendant Heilig's order to dump his tray and leave. (Compl., ECF No. 1, PageID.3.) The "[r]efusal or failure to immediately follow a valid and reasonable order of an

5

employee" constitutes "disobeying a direct order" under MDOC Policy. MDOC Policy Directive 03.03.105, Attach. B (eff. Aug. 26, 2024). Plaintiff's refusal to follow Defendant Heilig's orders cannot be considered protected activity under the First Amendment—or any other amendment. Therefore, the Court will dismiss Plaintiff's First Amendment claims.

### D.     Eighth Amendment Excessive Force Claim

Plaintiff alleges that Defendant Heilig used excessive force against Plaintiff when Defendant Heilig threw Plaintiff against the wall and used his forearm to pin Plaintiff's neck against the wall. The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was

6

applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

The Court recognizes that some use of force by Defendant Heilig may have been necessary to restore order. However, at this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, on initial review, the Court will not dismiss Plaintiff's Eighth Amendment excessive force claims against Defendant Heilig.

### E.     Eighth Amendment Sexual Assault and Sexual Harassment Claims

Plaintiff also alleges that Defendant Heilig rubbed "the crack of [Plaintiff's] buttocks in a sexually/[fondling] motion while whispering, 'You like that b****!'" (Compl., ECF No. 1, PageID.3 (asterisks added).) The Court will construe Plaintiff's allegations as raising an Eighth Amendment claim for sexual harassment and abuse.

7

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit has repeatedly held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey v. Wilson*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim). Accordingly, Plaintiff cannot state an Eighth Amendment claim premised upon Defendant Heilig's whispered comment.

Further, some courts, including the Sixth Circuit, have held that minor, isolated incidents of sexual touching coupled with offensive sexual remarks also do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's

8

buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

Here, although Plaintiff characterizes Defendant Heilig's conduct as a "sexually/[fondling] motion" and Plaintiff contends that Heilig made a sexual remark around the same time, Plaintiff alleges no facts that distinguish his case from the facts present in the foregoing cases. Plaintiff, therefore, fails to state an Eighth Amendment claim for sexual harassment and abuse against Defendant Heilig.

### F. Eighth Amendment Failure to Intervene

Plaintiff alleges that Defendants Earegood and Rockwell arrived while Defendant Heilig had Plaintiff pinned to the wall, and that Defendants Earegood and Rockwell then escorted Plaintiff to segregation. (Compl., ECF No. 1, PageID.3.) The Court will liberally construe Plaintiff's allegations as claims against Defendant Earegood and Rockwell for failure to intervene during Defendant Heilig's use of force.

An officer is liable for another officer's use of force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). Here, Plaintiff alleges that Defendant Heilig had already pinned Plaintiff to the wall by the time that Defendants Earegood and Rockwell arrived. Plaintiff's complaint does not contain any indication that Defendants Earegood and Rockwell would have had any opportunity to prevent Defendant Heilig's use of

9

force. Moreover, Plaintiff states that, upon their arrival, Defendants Earegood and Rockwell escorted Plaintiff to segregation, necessarily requiring that Plaintiff be removed from the wall. Accordingly, Plaintiff cannot state any Eighth Amendment claim against Defendants Earegood and Rockwell for failure to intervene.

### G. Fourteenth Amendment Due Process Claims

Plaintiff alleges that Defendants Earegood and Rockwell escorted Plaintiff to segregation, that Plaintiff was falsely charged with assault and battery on prison staff, and that Defendant Rakell reviewed Plaintiff on the misconduct charge, for which he was ultimately found guilty. (Compl., ECF No. 1, PageID.3.) The Court will construe these allegations to raise claims for violation of Plaintiff's Fourteenth Amendment right to procedural due process.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct charge could have affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is

serving an indeterminate sentence for an offense committed after 2000,[1] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff alleges that he was placed in segregation before the hearing related to his misconduct charge but does not specify how long he spent in segregation. (Compl., ECF No. 1, PageID.3.) Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See,*

---

[1] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=947819 (last visited June 2, 2025).

11

*e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff does not describe the sanctions, if any, that he received because of his misconduct conviction. However, the events described in Plaintiff's complaint occurred in February 2025. Therefore, even if Plaintiff remains in segregation due to the allegedly false misconduct charge, the foregoing precedent demonstrates that the deprivation suffered by Plaintiff is/was neither atypical nor significant. Plaintiff's allegations therefore fail to implicate a liberty interest and his due process claim concerning the falsified misconduct charge and stay in segregation will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants MDOC, Rockwell, Earegood, and Rakell will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment, Eighth Amendment sexual assault, and Fourteenth Amendment

claims against remaining Defendant Heilig. Plaintiff's Eighth Amendment excessive force claim against Defendant Heilig remains in the case.

An Order consistent with this Opinion will be entered.

Dated:   June 9, 2025                     /s/ Jane M. Beckering
                                                                Jane M. Beckering
                                                                United States District Judge